VERBURG v. CITY OF GRAND RAPIDS.

1. MUNICIPAL CORPORATIONS—SALE OF PARK LAND—OFFICIAL MASTER
   PLAN.
   Park land included in a home-rule city's official master plan may
   not be the subject of sale simply by means of advertising and
   inviting sealed bids therefor and acceptance of the highest
   bid in view of pertinent provisions of home-rule city act (CLS
   1956, § 117.5, subd [e]).

2. SAME—SALE OF PARK LAND—STATUTES—CHARTERS.
   Home-rule city act provision authorizing sale of park land upon
   approval of 3/5 of the electors voting thereon is an exercise
   of the legislature's inherent power to authorize proper munici-
   pal action in the control of property, hence, it is unnecessary
   that municipal charter also 'expressly confer such authority
   upon the city (CLS 1956, § 117.5, subd [e]).

3. SAME—SALE OF PARK LAND—OFFICIAL MASTER PLAN.
   Defendant home-rule city in suit to enjoin it from selling park
   land, claimed to be within its official master plan, held, not in
   position to question validity of plan that had been adopted
   by a commission of the city government, where, although the
   plan had not been certified to the council and the register of
   deeds, none of the parties involved in the case were unaware
   of the plan or its provisions, and certification of the plan
   had not been made a condition to validity (CL 1948, § 125.38).

4. COSTS—PUBLIC QUESTION—CONSTRUCTION OF STATUTES.
   No costs are allowed in suit to enjoin city from selling part of
   its park land, where questions of public interest and statutory
   construction are involved.

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 38 Am Jur, Municipal Corporations § 487; 39 Am Jur, Parks,
   Squares, and Playgrounds § 34.
   To what uses may park property be devoted?  18 ALR 1246, 63 ALR
   484, 144 ALR 486.
[4] 14 Am Jur, Costs § 36.

Appeal from Superior Court of Grand Rapids; Hoffius (Stuart), J., presiding. Submitted January 11, 1962. (Docket No. 78, Calendar No. 49,130.) Decided May 17, 1962.

Bill by Robert Verburg against the City of Grand Rapids, a municipal corporation, to enjoin sale of park property. Good Will Co., Inc., a Michigan corporation, high bidder for property, intervened as party plaintiff praying for adjudication of city's power and authority to dispose of property. Decree holding city may sell park property upon proper amendment to master plan and without vote of electors, but enjoining sale under pending invitation to bid because of improper procedure. Defendant appeals. Intervening plaintiff cross-appeals. Affirmed.

*Miller, Johnson, Snell & Cummiskey* (*James R. Hale* and *Stephen C. Bransdorfer,* of counsel), for intervening plaintiff.

*James K. Miller,* for defendant.

DETHMERS, J.   During the year 1940 defendant city acquired a parcel of land specifically described as follows:

"A parcel of land at the southeast corner of Fuller ave. and Michigan st., N. E., Grand Rapids, Michigan, commencing at said southeast corner running thence east 231 ft., south 300 ft., west 231 ft., north to beginning, being part of the NW 1/4 of NE 1/4 of Sec. 29–7–11."

Following its acquisition the land was used as a part of a park and playground. In 1959 the city commission, concluding that the parcel in question should be sold, caused it to be advertised, and invited sealed bids therefor. Such action was taken against the

recommendation of the Grand Rapids recreation board and the protests of approximately 350 residents of the area who wished to have the property retained for the purposes for which it had been used. A number of bids were submitted, the highest being that of the intervening plaintiff Good Will Company, Inc., in the sum of $130,180, which bid the defendant city accepted.

The plaintiff in the instant case is a resident and taxpayer of Grand Rapids and brought this suit in the trial court seeking an injunction against the city from continuing with its efforts to sell the property and restraining it from placing advertisements in papers, seeking bids therefor. On the filing of the bill an order was entered requiring defendant to show cause why the relief sought by way of temporary injunction should not be granted. The defendant by answer denied plaintiff's right to such relief. In reply to the order to show cause an affidavit was filed by the city attorney in effect asserting the authority of defendant to take the action contemplated by it, and asserting also that the park and recreation portion of the master plan adopted May 9, 1950, by the planning commission of the city excluded the real estate here in question.

The Good Will Company, Inc., a corporation, which had submitted the highest bid in response to the advertisements for offers for the property, was granted leave to intervene as a plaintiff in the cause. In its bill of complaint it alleged that it had delivered to the city with its offer to purchase a certified check in the sum of $6,509, that the city commission of defendant accepted the offer, and authorized the execution of a conveyance of title, but that the suit instituted by plaintiff Verburg had created a cloud on the title which prevented the city from complying with the conditions of intervenor's offer. Intervenor's bill further alleged that the charter of the

city contained no express authority to make the conveyance, and that, under pertinent statutory provisions, the conveyance could not be lawfully made without the approval of 3/5 of the electors voting on the question at a general or special election.

The case was submitted to the trial court on the pleadings, the arguments of counsel, and a stipulation as to the material facts. Said stipulation contained a number of exhibits, some of which related to the master plan as adopted by the city planning commission. Under date of July 13, 1960, the parties by their respective counsel stipulated that amendments might be made to the answer of any of the parties, and received in the pleadings in the cause. A court order was entered in accordance with the stipulation, and pursuant thereto the defendant city filed a supplemental answer setting forth a resolution adopted by the planning commission for the release of the parcel of land involved in the instant suit from the park and recreation portion of the master plan. The apparent date of the final resolution referring to such release was June 30, 1960.

The trial judge, after giving due consideration to the questions raised by the parties to the case, filed on November 10, 1960, a carefully prepared opinion. Referring therein to the adoption of the so-called master plan of the city he pointed out that the minutes of the planning commission indicated that the parcel here involved was eliminated from the plan, pointing out further, however, that counsel in the case "agree that this is a mere mistake in the minutes and that the planning commission at all times intended for the parcel involved in this litigation, to be included in the master park plan." It must be conceded that some of the exhibits contained in the stipulation of facts indicate that the members of the planning commission did not intend, in adopting the plan, that this parcel should be in-

·cluded. However, the record suggests that such parcel was used for park and playground purposes and, inferentially, considered as forming a portion of the park and recreation facilities of the city ·covered by the master plan. The resolution set forth in the supplemental answer filed by the city, above mentioned, may well be regarded as a con·cession as to the fact.

Primarily involved in the controversy is the interpretation of section 5(e) of the city home-rule act* (CLS 1956, § 117.5, subd [e], Stat Ann 1961 Cum Supp § 5.2084, subd [e]) which reads as ·follows:

. "No city shall have power:    *   *   *

"(e) To adopt a charter or any amendment thereto, unless approved by a majority of the electors voting thereon; to sell any park, cemetery or any part thereof, except where such park is not required under an official master plan of the city; or to engage in any business enterprise requiring an investment of money in excess of 10 cents per capita or authorize any issue of bonds except bonds issued in anticipation of the collection of taxes actually levied and uncollected or for which an appropriation has been made, bonds which the city is authorized by its charter to issue as part of its budget system, to an amount which in any year together with the taxes levied for the same year, will not exceed the limit of taxation authorized by law, special assessment bonds, bonds for the city's portion of local improvements, refunding bonds, and emergency bonds as defined by this act, unless approved by 3/5 of the electors voting thereon at any general or special election."

If the land in question was, as the trial judge concluded, included within the master plan, it is obvious

_____
* PA 1909, No 279, as amended (CL 1948, § 117.1 *et seq.*, as amended [Stat Ann 1949 Rev and Stat Ann 1961 Cum Supp § 5.2071 *et seq.*]).

that it was not released therefrom until after the action of which the plaintiffs complain in the instant case had been taken. In other words, it was at the time included in the official master plan of the city. If such was the situation the city was without authority to sell it in the manner attempted. The trial judge correctly so held.

On behalf of intervening plaintiff, which has filed a cross appeal from the decree entered, it is contended that the city does not have power to sell a park, or portion thereof, without express authority in its charter. We are not in accord with such claim. The statutory provision above quoted in terms authorizes such a sale if approved by 3/5 of the electors voting thereon at a general or special election. The charter* authorizes the city commission to sell real estate subject to the general laws of the State. The legislature has inherent power by legislation to authorize proper municipal action in the control of property. In *Briggs* v. *City of Grand Rapids,* 261 Mich 11, it was expressly held that under CL 1929, § 2241 (now CLS 1956, § 117.5, Stat Ann 1961 Cum Supp § 5.2084 *supra*), the city of Grand Rapids was authorized with the approval of 3/5 of the electors to sell a park. In that case the question was submitted to popular vote and approval granted. See, also, *Harsha* v. *City of Detroit,* 261 Mich 586 (90 ALR 853).

The claim has also been advanced in the case on appeal that the city of Grand Rapids had no valid master plan, such claim being predicated on the alleged failure of the planning commission to have an attested copy of such plan certified to the council and to the county register of deeds. Reference to such certification is contained in section 8 of PA

---

* Title 10, § 2, of the charter.

1931, No 285, as amended* (CL 1948, § 125.38 [Stat. Ann 1958 Rev § 5.2998]), which reads as follows:

"The commission may adopt the plan as a whole by a single resolution or may by successive resolutions adopt successive parts of the plan, said parts corresponding with major geographical sections or divisions of the municipality or with functional subdivisions of the subject matter of the plan, and may adopt any amendment or extension thereof or addition thereto. Before the adoption of the plan or any such part, amendment, extension, or addition the commission shall hold at least 1 public hearing thereon, notice of the time and place of which shall be given, not less than 15 days prior to such hearing, by 1 publication in a newspaper of general circulation in the municipality and in the official gazette, if any, of the municipality, and by registered United States mail to each public utility company and to each railroad company owning or operating any public utility or railroad within the geographical sections or divisions of the municipality affected. The adoption of the plan or of any such part or amendment or extension or addition shall be by resolution of the commission carried by the affirmative votes of not less than 6 members of the commission. The resolution shall refer expressly to the maps and descriptive and other matters intended by the commission to form the whole or part of the plan, and the action taken shall be recorded on the map and plan and descriptive matter by the identifying signature of the chairman and/or secretary of the commission. An attested copy of the plan or part thereof shall be certified to council and to the county register of deeds."

A similar question was raised in *Scholnick* v. *City of Bloomfield Hills*, 350 Mich 187, 193. There the master plan was offered in evidence as an exhibit

---

* CL 1948, § 125.31 *et seq.*, as amended (Stat Ann 1958 Rev § 5.2991 *et seq.*).

in the case and was received without objection. It was held that the question could not be raised on appeal. In the case at bar we think that appellant's objection, apparently advanced at the time of the submission of the case, was inconsistent with the exhibits set forth in the stipulation of facts and was waived by the supplemental pleading above mentioned. It is, therefore, unnecessary to consider the question at length. It may be noted, however, that the statute does not make the certification of the plan a condition of its validity. It may be assumed that it was intended that it should be made accessible to the public generally. The situation involved here does not concern a party or parties unaware of the plan or of its provisions. It was adopted by a commission of the city government and under the record before us appellant is not in position to now question its validity.

The decree entered by the trial court correctly disposed of the controversy, and it is affirmed. Questions of public interest and of statutory construction being involved, no costs are allowed.

CARR, C. J., and KELLY, BLACK, KAVANAGH, SOURIS, OTIS M. SMITH, and ADAMS, JJ., concurred.